### W. T. Lytle v. M. Halff & Bro.

#### No. 2784.

1. **Constitutional Law—Legislative Act.**—An act of the State Legislature will be held valid unless its passage is expressly or by necessary implication forbidden by some superior law.

2. **Same.**—A prohibition against the exercise of legislative power can not result from necessary implication unless, looking to the language and purpose of the Constitution, it is evident that without such implication the will of the people, as manifest by an inspection of all the provisions of the Constitution, can not be given effect.

3. **Same.**—Under sections 7 and 14 of article 5 of the State Constitution, the Legislature may increase or diminish the number of judicial districts and prescribe what territory should be embraced in a given district.　In the absence of some constitutional prohibition the Legislature has power to create a judicial district out of territory, however small, when in its judgment the public interest requires it.

4. **Same.**—Nothing contained in article 5, section 7, of the State Constitution,

shows either an express or implied prohibition against the legislative power to create a judicial district with less territory than an entire county.

5. **Same.**—No necessary implication can arise from the requirement in section 7, article 5, of the State Constitution, which requires "regular terms of the court to be held at one place in each county in the district twice in each year," that it was intended to prohibit the creation of more than one judicial district in a county. Another clause of the same section which confers the power " to provide for the holding of more than two terms in any county in one year for the dispatch of business," shows that the former provision was only intended as a limitation on the legislative power to reduce the number of terms of court.

6. **Same.**—The place within the county at which sessions of the District Court may be held is subject to statutory control, and the Constitution contains nothing express or implied which prohibits two District Courts from holding sessions in the same place.

7. **Same.**—Nothing contained in article 5, section 9, of the State Constitution prohibits the Legislature from providing two District Courts for one county.

8. **Same.**—A State Constitution grants no power to a Legislature, but limits its exercise. The fact that the necessity for the exercise of a legislative power was manifestly not foreseen by the framers of a State Constitution, can not be regarded as impliedly prohibiting its exercise.

9. **Same—District Clerk.**—The Act of 1889 creating the Forty-fifth Judicial District, which requires the clerk of the District Court of Bexar County to perform in the courts of the Forty-fifth and Thirty-seventh Judicial Districts the duties imposed by law on a district clerk, violates in this regard no constitutional provision.

10. **Constitution Construed.**—Nothing contained in the Constitution of Texas, either expressly or by necessary implication, prohibits the Legislature from creating the Forty-fifth Judicial District in Bexar County, in which the Thirty-seventh Judicial District also exists.

11. **Same—Special or Local Laws.**—Though a law prescribing the territory which shall constitute a judicial district is necessarily local in its character, the power to enact such a law is expressly recognized, and is not in conflict with article 3, section 56, of the Constitution.

12. **Quære.**—Quære, whether so much of the Act of 1889 creating a new judicial district in Bexar County as provides that no grand jury shall be summoned or impaneled in the court to be held in such district, but that a grand jury shall be organized at each term of another District Court in the same county, to inquire into all offenses committed within the entire county, is constitutional.

13. **Same.**—Clauses in the Act creating the Forty-fifth Judicial District, claimed to be of doubtful constitutionality, are not so inseparably connected with those portions of the act clearly constitutional as to involve the legality of the entire act.

14. **Same.**—Courts sitting in the Forty-fifth and Thirty-seventh Judicial Districts, in Bexar County, are legal courts, entitled to exercise the jurisdiction conferred on District Courts by the State Constitution.

APPEAL from Bexar. Tried below before Hon. W. H. King. The opinion states the case.

*Barnard & Green* and *Geo. C. Altgelt*, for appellant.—The District Court of Bexar County, Forty-fifth Judicial District of Texas, did not have jurisdiction or power to render the judgment pronounced, and the said judgment rendered is void, because the act of the Legislature of February 6, 1889, is unconstitutional.

Want of power in the Legislature to establish two District Courts in one county. Const., art. 5, secs. 1, 7, 8, 9.

Unconstitutionality of the third, fourth, fifth, and eighth sections of the act. Const., art. 3, sec. 56.

Unconstitutionality of the ninth section of the act. Const., art. 16, sec. 40.

General rules of construction. Ex Parte Towles, 48 Texas, 413; Cool. Const. Lim., ch. 4.

*Simpson & James, N. O. & J. A. Green,* and *J. H. McLeary,* for appellees.—The Legislature has power to divide a county into two judicial districts and provide for the appointment of district judges therein.

General powers of the Legislature. Const., art. 5, secs. 1, 7, 14; Const., art. 3, sec. 25; Cool. Const. Lim., 87; 102 N. Y., 350, 351.

Rules observed in construing legislative power. Cool. Const. Lim., 4 ed., 221, 222; Sutherland v. De Leon, 1 Texas, 304; Orr v. Rhine, 45 Texas, 354; 7 Texas Ct. App., 231, citing 34 Ala., 238; Cool. Const. Lim., 220; Ogden v. Saunders, 12 Wheat., 270; Fletcher v. Peck, 6 Cranch, 128; People v. Draper, 15 N. Y., 533; Faw v. Marsteller, 2 Cranch, 23; Potter's Dwarris, 367, 368..

Necessary implication. Wilkinson v. Adam, 1 Ves. & B., 466.

Power to establish courts. Const., art. 5, secs. 1, 7–14, art. 3, sec. 25; Henderson v. Beaton, 52 Texas, 29; People v. Draper, 15 N. Y., 533; Ex Parte Towles, 48 Texas, 439.

STAYTON, Chief Justice.—The Legislature at its last session passed an act whereby the county of Bexar was divided into two parts by a line running through the center of the court house, and that part of the county on the north and west of that line was declared to constitute a new judicial district, to be known as the Forty-fifth Judicial District, while all that part of the county south and east of that line was declared to constitute the Thirty-seventh Judicial District.

Bexar County before this act composed the Thirty-seventh Judicial District, and the judge and district attorney in office in that district were continued in office in the new district bearing the same number, but provision was made for the appointment of a judge for the Forty-fifth District, his successor to be elected by the electors resident in that part of the county which was declared to constitute the new district. The act provided that the courts in both districts should have concurrent jurisdiction throughout the limits of Bexar County of all matters, civil and criminal, to the extent this is conferred on District Courts by the Constitution, and that grand and petit juries should be selected and drawn from the body of the county; providing, however, that no grand jury should be organized in the Forty-fifth District.

The judge of the Thirty-seventh District, however, is required at each term of his court to organize a grand jury empowered to inquire into all offenses committed within the entire county, whose indictments, together with all appeals in criminal cases from inferior courts in the county, are made returnable to the District Court for the Thirty-seventh Judicial District.

Civil actions brought in the county or appealed to the District Court from inferior tribunals in any part of the county may be filed in either court, at the option of the plaintiff or appellant.

The act authorizes the judge of either district, at his discretion, to transfer any cause, civil or criminal, which may be pending in his court to the other court; and upon the taking effect of the act the clerk of the District Court for Bexar County is directed to enter on the docket of the court for the Thirty-seventh District all causes then pending in that court, or to be filed therein subsequently under the provisions of the act, and to place on the docket of the court for the Forty-fifth Judicial District all causes that may be transferred to that court by the judge for the Thirty-seventh District or filed in the court under the provisions of the act.

The act further declared all laws and parts of laws in conflict with it repealed.   Gen. Laws 1889, p. 165.

In accordance with the act a judge was appointed for the Forty-fifth Judicial District, and the act having become operative, appellees brought an action in the District Court of that district against appellant on a promissory note for more than five hundred dollars.

Citations were duly issued and served on appellant, who failed to answer, and a judgment by default was entered against them.

Before the adjournment of the court appellant filed a motion to set aside the judgment and dismiss the cause upon the ground that the act creating the district was unconstitutional, but the motion was overruled, and from the judgment this appeal is prosecuted.

It is agreed by the parties that there is no question involved other than the validity of the act before referred to, and that if the act be held constitutional the judgment shall be affirmed, but if it be held otherwise the judgment shall be reversed and the cause dismissed.

It is contended on the one side, while there is no provision in the Constitution which expressly prohibits the creation of two judicial districts in one county, an implied prohibition arises from the various provisions of that instrument, and that some parts of the act are in violation of article 3, section 56, of the Constitution, which forbids the passage of local or special laws therein enumerated.

On the other hand, it is claimed that none of the provisions of the act are in conflict with the section of the Constitution referred to or with any other, and that so much of the act as creates two judicial districts in

one county is not so repugnant to any express provision of the Constitution as to justify a holding that such legislation is impliedly forbidden.

There is no pretense that the act in question in any way conflicts with any superior law other than the Constitution of this State, and if it be not forbidden by that it must be sustained.

It has frequently been said that an act of a State Legislature must be held valid unless some superior law in express terms or by necessary implication forbade its passage.

A prohibition of the exercise of a power can not be said to be necessarily implied, unless looking to the language and purpose of the Constitution it is evident that without such implication the will of the people, as illustrated by a careful consideration of all its provisions, can not be given effect.

The prohibition which it is claimed ought to be implied in this case is. not one affecting any private or personal right, nor is it one that can arise because the power to do the act has been conferred on some department of the government other than the Legislature, from which an implied prohibition to the Legislature will arise.

The implication sought to be raised relates to a mere matter of expediency, which there is a manifest propriety in leaving to the determination of the Legislature from time to time, and which it is seldom the purpose of a Constitution to determine. It affects neither a public nor private right.

An intention to restrict the power of a State Legislature, and especially in reference to such a matter, further than this is done by express limitations, is not to be presumed, and when it is claimed that this is done by implication those so claiming ought to be able to point out the provision or provisions of the Constitution which require such implication to give effect to the will of the people evidenced by the entire instrument.

That necessary implications exist under the provisions of the Constitution of this State we do not question, and one of them is found in article 5, which establishes certain courts and fixes their several jurisdictions. In absence of an express prohibition the Legislature would have no power to declare that the several courts thus created should not exercise the powers conferred on them, or to create other courts and transfer these powers to them, except as the Constitution may provide for such change of jurisdiction.

Now there is an implied limitation placed on the Legislature resulting from the fact that the people, acting in their sovereign capacity, have declared that certain courts with defined powers shall exist and constitute one of the three departments of the government, which the people never could have intended might be destroyed in whole or in part by another department or all the other departments.

The declaration is that the executive, legislative, and judicial depart-

ments shall exist—this is the fiat of the people; and neither one nor all of the departments so created can enlarge, restrict, or destroy the powers of any one of them except as the power to do so may be expressly given by the Constitution.

It is contended that article 5, sections 1, 7, 8, and 9, of the Constitution impliedly prohibit the creation of two judicial districts in one county. Article 5, section 1, of the Constitution provides: "The judicial powers of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be established by law."

So much of this section has no bearing on the question before us, for it does not attempt to determine what territory may be made a judicial district, but simply, among other things, provides for Districts Courts as a part of the judiciary department, on which by succeeding sections a given jurisdiction is conferred.

It may be said that all the courts named in this section are created by it. It is true that this section of the Constitution expressly recognizes the power of the Legislature to establish "Criminal District Courts," which illustrates the fact that the people desired that such courts should be established as would meet the demand resulting from growth of population and other causes; but it is most likely true that this recognition of power was made in order to prevent any doubt as to the power of the Legislature to confer on them, if created, a jurisdiction by the Constitution itself conferred on the district and inferior courts; and further, in connection with the recognition of the power, to declare its limitations.

In the one case it is the establishment—creation of a court—which, when brought into existence, will exercise a jurisdiction conferred by the Constitution on other courts, while in the other the power exercised is but that of fixing the territory within which an established court shall be held.

The express grant or recognition of the one power ought not to be held impliedly to prohibit the exercise of the other, and especially so in view of the provisions of the Constitution next to be considered.

Article 5, section 7, provides, "The State shall be divided into twenty-six judicial districts, which may be increased or diminished by the Legislature." And section 14 of same article provides that "the judicial districts in this State and the time of holding the courts therein are fixed by ordinance forming part of this Constitution, until otherwise provided by law."

Both of these sections evidence the fact that it was intended the Legislature—the only body empowered to make laws—should have power to increase or diminish the number of judical districts, and to determine what territory should be embraced in a given district; and, in the absence

of some limitation in these respects, nothing further appearing to illustrate the intention, the presumption would be that it was the intention to confer on the Legislature the power to create a judicial district out of a territory, however small, if the business within it so required.

Section 7 provides that the district judges shall be elected by the qualified voters of the district, but there is nothing in this which evidences an intention that a judicial district might not embrace less territory than a county.

It further provides a district judge "shall hold the regular terms of court at one place in each county in the district twice in each year, in such manner as shall be prescribed by law. The Legislature shall have power by general act to authorize the holding of special terms when necessary, and to provide for holding more than two terms of court in any county for the dispatch of business."

These provisions evidence an intention to leave with the Legislature full power to require District Courts to be held as frequently as may be necessary to dispose of the business of any county with reasonable dispatch, but absolutely to require that at least two terms of court shall be held every year in each county.

There is nothing in these considerations to induce the belief that it was intended no judicial district should be composed of less territory than an entire county.

Prior to the adoption of the present Constitution it may be true that the business of no county in the State was so large that it could not be transacted by one District Court with reasonable promptitude, and that no consideration was given to the question whether a time would come when the increase of population and wealth and consequent increase of litigation would render it impossible for one court to do this; but if this be true, we could not conceive it possible that the people intended to deny to the Legislature the power to do that to which no thought was given, and so in the face of the manifest intention to give to the Legislature full power to compel such courts to be held so long and so often as might be necessary for the prompt trial of all causes which might be brought before them.

In reference to counties, article 9 of the Constitution expressly confers on the Legislature "power to create counties for the convenience of the people, subject to the following provisions."

Then follows a provision that no new county should be formed from territory not then within existing counties with a less area than nine hundred square miles, in a square form, unless prevented by pre-existing boundary lines, and still the further provision that "within the territory of any county or counties now existing no new county shall be created with a less area than seven hundred square miles, nor shall any such county now existing be reduced to a less area than seven hundred square miles."

We have here an instance in which the people thought it necessary expressly to impose a limitation on the power of the Legislature to create a subdivision of the State, whose purpose is kindred to that for which judicial districts are created, and if it had been intended that a like limitation should be imposed on the power to create judicial districts the inference is fair that such intention would have been expressed in language as explicit.

We have another instance in which it was deemed necessary expressly to declare that a subdivision of the State for purposes of representation should not be severed in that article 3, section 25, after providing for the division of the State into senatorial districts to be composed of contiguous territory, declares that "no single county shall be entitled to more than one senator."

When the Constitution was adopted it is reasonable to suppose that it was expected to continue in force for a considerable period, and it can not be presumed that the people did not expect some of the counties and towns and cities then existing to become populous, and the business in the courts greatly to increase while it remained in force, and it would be hard to believe, in view of the solicitude shown to furnish courts sufficient for the prompt disposition of business, if a specific intention existed that there should not be more than one District Court held in a county, that the Legislature should have been denied power to organize counties so small that the litigation pertaining to the jurisdiction of a District Court might be disposed of by one court.

It must be presumed, in view of the action of the Legislature, that one District Court can not dispose of the business of that jurisdiction in Bexar County, and that another is necessary to that end; and before a prohibition against the exercise of the power to create two judicial districts within that territory can be implied, the language of the Constitution should very clearly evidence the intention of the people to deny power to the Legislature so to organize the districts as to give more than one District Court to a county, if necessary to accomplish the purpose for which courts are created.

It seems to be insisted that the declaration that district judges "shall hold the regular terms of court at one place in each county in the district twice in each year" shows an intention to forbid the creation of more than one judicial district in a county; but we do not think such an implication necessary to give effect to the intention of the people as manifested by the entire Constitution.

The purpose of this provision was to secure the holding of such courts, and to deprive the Legislature of the power to make any law which would deprive the people of any county of at least two terms of the court during each year. Without this declaration the Legislature would have had such power; and it would not necessarily follow, because the Legislature

was deprived of the power to diminish the number of terms to be held in a county by a provision intended to secure to the people at least that number of terms in each year, that an intention existed to withhold from it the power to provide for the holding of terms, as many as might be found necessary, by more than one District Court in a county.

The denial of the power to deprive each county of two terms in each year ought not to be construed into a denial of the power to give more terms during the year, even though held by more than one court created by the Constitution, whose jurisdiction territorially must in the nature of things be determined by the Legislature, and especially so in the face of the provision which expressly declares the power of the Legislature "to provide for holding more than two terms of the court in any county for the dispatch of business," which clearly evidences that the former provision was a limitation on the power to reduce the number of terms in each year, and nothing more.

The terms of court are required to be held at one place in each county in the district twice in each year. By the words "one place" we do not understand to be meant one town or one house; for if this was the meaning, in the case of removal of a county seat, which is provided for by the Constitution, it might be necessary to hold a court at a place other than the county seat.

The Constitution does not declare at what place in each county the District Courts shall be held, but leaves that to be determined by the Legislature, which has declared that such courts shall be held at the county seats of the several counties. By the words "one place" we understand to be meant the place prescribed by law—the county seat. Two District Courts may sit there as well as one, and we see nothing in the act in question which contravenes either the letter or the spirit of the Constitution, in so far as that instrument provides where District Courts shall be held.

It is urged that article 5, section 9, of the Constitution, which provides for a clerk for the District Court of each county, for his election, and for an appointment in case of a vacancy, evidences an intention that but one District Court should be permitted to be held in any one county. This section may tend to show that the people may not have considered whether it ever would become necessary to create more than one judicial district in a county, and that they determined that one clerk of the District Court would be enough in any county; but if this be admitted it does not meet the question before us, for power in the Legislature to enact a given law can not be held to be impliedly denied merely because it may appear from an examination of the Constitution that it was not foreseen at the time of its adoption that a necessity for the exercise of such a power would ever arise.

If the Constitution were the source from which springs the power of

the Legislature there would be force in the proposition that the people did not intend to confer a power the necessity for the exercise of which was not foreseen; but no force can be given to such a fact when all legislative power, except in so far as this power is restricted by constitutional limitations, rests with the department of government to which the law making power is confided.

The act in question provides that the clerk of the District Court for Bexar County shall perform in two courts the duties which the law imposes on such clerks in every county in the State, and neither enlarges nor restricts the powers and duties imposed by law on that officer.

Difficulties in the way of appointment to that office in case of vacancy are suggested, but these are not insuperable and arise on a supposed state of facts which can not exist without failure of duty on the part of the judges. Such considerations ought not to be given a controlling influence in determining a question of legislative power.

We do not see that section 8, article 1, of the Constitution has any bearing on the immediate question under consideration, though it may have on the validity of so much of the act as declares that no grand jury shall be empaneled in the Forty-fifth Judicial District, and that criminal causes shall reach that court only when the judge in the Thirty-seventh Judicial District may see proper to transfer causes to it.

Courts are not authorized to hold that a Legislature has exceeded its power unless able to point to some part of the Constitution which denies to that body the right to exercise the given power. As said in Orr v. Rhine, 45 Texas, 354, uncertain and doubtful inferences and deductions are not sufficient to authorize a court to hold that the Legislature exceeded its power in the passage of a statute; and finding no provision of the Constitution which expressly or by necessary implication denies to the Legislature the power to create more than one judicial district in a county, we are not authorized to hold that it had not such power.

It is suggested that so much of the act as assumes to deny to the District Court to be held in the Forty-fifth Judicial District the power to empanel and have the services of a grand jury, and in so far as it assumes to deny the power of that court to try criminal causes other than such as may be transferred to it by the court to be held in the Thirty-seventh District, is contrary to the Constitution.

It is clear that the Legislature has no power to withdraw from any District Court any part of the jurisdiction conferred on such courts by the Constitution, unless this may be done in cases contemplated by section 1, article 3, of that instrument.

No person can be held to answer for a felony unless on the indictment of a grand jury (Const., art. 1, sec. 10), and it may be true that an act which denies to a District Court the power to have inquisition and accusation by a grand jury denies in an essential matter the full exercise of

that jurisdiction conferred on such courts; for if the court has no power to have an accusation made as required by the Constitution, the basis for its power to hear and determine is taken away, except in so far as indictments may be sent to it by another court for trial.

It may be further true that the Legislature has no power to make the jurisdiction of a District Court to try any criminal cause of which it is given jurisdiction by the Constitution, based on a crime committed within the territory over which it is given jurisdiction, dependent on the volition and act of another District Court.

It is contended that the act is in conflict with the paragraphs of article 3, section 56, which prohibit the passage of local or special laws regulating the affairs of counties, regulating the practice or jurisdiction of courts, and the summoning or empaneling of grand or petit jurors.

Every law fixing the territory which shall constitute a judicial district is necessarily local in its character, but the power of the Legislature to do this is expressly recognized.

The creation of two judicial districts in a county operates no further towards the regulation of the affairs of the county than does the establishment of one, and it seems to us that the act in question is not within the meaning of the Constitution, one regulating the affairs of a county, for that paragraph of the section referred to has application to such affairs as are common to all the subdivisions of the State referred to in it.

That the Legislature is denied the power to pass local or special laws regulating the practice or jurisdiction of courts is true, and there may be some provisions of the act in question which contravene that provision, and this may be true of so much of the act as provides that no grand jury shall be summoned or empaneled in the court to be held in the Forty-fifth Judicial District; but it is unnecessary for us to pass upon these matters or others that have been referred to, for it does not follow, if this be so, that the court sitting in either of the districts established in the county is not a legal court, having jurisdiction to try the cause before us on appeal.

The leading purpose of the act was to establish two judicial districts and thus secure the holding of two District Courts in the county, and the parts of the act claimed to be in conflict with the Constitution are not so inseparably connected with that part of the act we hold valid as to require a holding that the entire act must fall did we hold some of its provisions in conflict with the Constitution.

Nor are the provisions as to legality of which there may be question such as to induce the belief that the Legislature would not have passed the act with these omitted.

At the same session at which the act in question was passed the Legislature created two judicial districts in the county of Dallas, and in the act doing this some of the provisions in that before us claimed to be invalid are not found.

It may be that some of the provisions of the act are not in harmony with existing legislation, but it can not be held because there may be conflict between statutes that either for this reason is unconstitutional; and if there be conflicts or want of harmony between the act in question and other laws, it will be the duty of the Legislature to correct this, as will it be to pass such general laws as may be found necessary in order to the harmonious and efficient working of two District Courts within one county.

We do not wish to be understood to decide that all the provisions of the act before us are in harmony with the Constitution, nor that they are not, but simply to decide that the courts sitting in the two judicial districts organized in Bexar County are legal courts, entitled to exercise the jurisdiction conferred on District Courts by the Constitution, from which it follows there is no error in the judgment in this cause appealed from.

We deem it proper further to say, if there be provisions in the act inconsistent with other laws and in conflict with the Constitution, then the repealing clause in the act can not be held to repeal the former law inconsistent with such provisions.

The judgment of the court below will be affirmed.

*Affirmed.*

Delivered November 15, 1889.