

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 13, 1949

Hon. Don A. Lewis, Chairman
Committee on Counties
House of Representatives
51st Legislature
Austin, Texas

Opinion No. V-810.

Re: Constitutionality of House
Bill No. 573 providing for
home rule charter election
in Dallas County.

Dear Sir:

Referring to your letter to this office, we find that you submit for our consideration the following:

"The Committee on Counties has asked me, as Chairman, to transmit to you H. B. 573 by the Dallas County delegation in the House of Representatives which provides that Dallas County may adopt a 'Home Rule Charter' by a majority vote of the resident qualified electors of said county.

"The Committee desires your opinion as to whether or not Section 3 of Article IX of the Constitution requires that the vote on a 'Home Rule Charter' shall be separated as to rural and urban vote."

House Bill 573 includes the following provisions:

"Section 1. Authority is conferred upon Dallas County to adopt a 'Home Rule Charter' in accordance with the provisions of Section 3 of Article IX of Constitution of Texas by a favorable vote of the resident qualified electors of said county, and it shall not be necessary for the votes cast by the qualified electors residing within the limits of all incorporated cities and towns in the county to be separately counted from those cast by qualified electors of the county who do not reside within the limits of any incorporated city or town, and a favoring majority of the votes of such electors cast in the

county as a whole so determine the result of such election.

"Sec. 2. The authority hereby granted is by a two-thirds (2/3) vote of the total membership of each House of the Legislature."

Subsection 2 of Section 3 of Article IX reads in part:

". . . In elections submitting to the voters a proposal to adopt a charter (unless otherwise provided by a two-thirds vote of the total membership of each House of the Legislature) the votes cast by the qualified electors residing within the limits of all the incorporated cities and towns of the county shall be separately kept but collectively carried and votes of the qualified electors of the county who do not reside within the limits of any incorporated city or town likewise shall be separately kept and separately counted, and unless there be a favoring majority of the votes cast without such collective cities and towns, the charter shall not be adopted. . . ."

It cannot be doubted that House Bill No. 573 is a special or local law since by its very provisions it can apply only to Dallas County and no other county may come within its terms. We assume compliance with Section 57 of Article III of the Texas Constitution. The inquiry thus presented is whether or not the parenthetical expression, "unless otherwise provided by a two-thirds vote of the total membership of each House of the Legislature," is sufficient authority for the Legislature to pass a special law allowing Dallas County to adopt a charter without following the provisions of the quoted sentence concerning the manner of keeping and counting the votes.

Section 56 of Article III of the Constitution reads in part:

"The Legislature shall not, except as otherwise provided by the Constitution, pass any local or special law, authorizing:

* * * * * *

"Regulating the affairs of counties, cities,
towns, wards or school districts; . . .

\* \* \* \* \* \*

"And in all other cases where a general law
can be made applicable, no local or special law
shall be enacted; . . ."

Unless the power to pass such a local or special law
can be found elsewhere in the Constitution, House Bill No. 573 is
clearly void as being repugnant to Section 56 of Article III of the
Texas Constitution. The underlying principle in the determination
of the constitutionality of any legislation passed by the Legislature
is that the courts will attempt to sustain the validity, if at all pos-
sible, and will not strike down legislation unless it is clearly re-
pugnant to some part of the Constitution. State v. Humble Pipe
Line Co., 112 Tex. 375, 247 S.W. 1082 (1923); Lower Colorado River
Authority v. McGraw, 125 Tex. 268, 23 S.W.2d 629 (1935). In this
latter case the principle was stated as follows:

"It is the rule of constitutional construction
as applied to state Constitutions that an act is val-
id unless the Constitution by express terms, or by
necessary implication, prohibits the Legislature
from doing what it has attempted to do in the pas-
sage of the act. In other words, an act of a state
Legislature must be held valid unless some supe-
rior law in express terms, or by necessary im-
plication, prohibits its passage. Lytle v. Half, 75
Tex. 128, 12 S.W. 610. . . ."

We must consider that a legislative interpretation of
its constitutional authority, in the form of legislation enacted there-
under, will be given great weight by the courts in determining the
constitutionality of the legislation enacted. Walker v. Meyers, 114
Tex. 225, 266 S.W. 499 (1924); First Nat. Bank of Port Arthur v.
City of Port Arthur, 35 S.W.2d 258 (Tex. Civ. App. 1931). With these
basic principles firmly in mind, we turn to the bill before us for
consideration.

Taken in its context, the parenthetical expression, "un-
less otherwise provided by a two-thirds vote of the total member-

ship of each House of the Legislature," means, in our opinion, that
the Legislature has authority to change the manner of totaling the
votes in an election to adopt a home rule charter in a particular
county. Subsection 2 of Section 3 of Article IX, before the portion
hereinbefore quoted, provides that:

> "Any county having a population of 62,000 or
> more . . . may adopt a Home Rule Charter . . . within
> the specific limitations hereinafter provided. It fur-
> ther is provided that the Legislature, by a favorable
> vote of two-thirds . . . may authorize any county, hav-
> ing a population less than above specified to proceed
> . . . for the adoption of a Charter. . . . No County
> Home Rule Charter may be adopted by any county
> save upon a favoring vote of the resident qualified
> electors of the affected county. In elections . . . (un-
> less otherwise provided by a two-thirds vote of . . .
> the Legislature), the votes cast . . . shall be separately
> kept . . ." (Emphasis added).

The above language, taken as a whole, indicates an intention
that the Legislature shall deal with special, local situations as
they think best.

The quoted sentence sets up the procedure which counties
must follow in the election provided for, but specifically reserves
to the Legislature the right to change this procedure. The import
of the sentence, in its entirety, is that all counties must use the
method of counting required, but the Legislature has the power
to provide other methods for any county when the Legislature finds
a need for a change. If the opposite view is taken, that the Legis-
lature cannot pass a special or local law for this purpose, we
would be confronted with the ambiguous situation of the people de-
termining that one method of vote counting is proper, by so provid-
ing in the Constitution, but at the same time instructing the Leg-
islature that if they thought the method provided was unsound they
must change it in its general application, in this manner overrid-
ing the people's mandate. It is more logical to say that when the
method was adopted by the people they determined that it was
sound but realized that it must be left to a branch of its govern-
ment informed on county affairs, the Legislature, to make specific
changes as necessary. Hence, the provision "unless otherwise

provided by a two-thirds vote of the total membership of each House of the Legislature."

In this manner we are confronted with two separate sections of our Constitution -- one prohibiting the Legislature from passing special laws regulating the affairs of counties, whereas the other gives the Legislature express authority to provide that changes might be made in the method of counting votes for the adoption of a home rule charter in particular counties. In order to give meaning to every word in Section 3 of Article IX the interpretation must be given to the parenthetical expression quoted that it in itself is authority for the Legislature to pass special laws providing for a different manner of tabulating the vote in a particular county.

A study of the cases in which the courts of this State have declared laws unconstitutional on the basis of Section 56 of Article III of the Constitution reveals that in those cases there was no express authority given in another section of the Constitution upon which the action taken by the legislature was based. In all cases it seems that the action taken by the legislature was such as was based upon the general legislative powers and when these actions are in conflict with that section of the Constitution prohibiting special or local laws, the courts have stricken the legislative action. Cf. Miller v. El Paso County, 136 Tex. 370, 150 S.W. 2d 1000 (1941); Anderson v. Wood, 137 Tex. 201, 152 S.W. 2d 1084 (1941).

It is to be noted that in Section 56 of Article III the Constitution provides that the Legislature may not pass local or special laws except "as otherwise provided by the Constitution" In all cases when the courts have been confronted with a contention that the Legislature has acted under a specific provision of the Constitution as against a contention that this action was void as being repugnant to that section of the Constitution prohibiting the passage of local or special laws, the courts have held that the legislative action was proper and that the grant of the right to pass local and special laws superseded the prohibition in Section 56 of Article III.

In Jones v. Anderson, 189 S.W. 2d 65 (Tex. Civ. App. 1945, error ref.) the court had occasion to deal with this specific question. Justice Murray speaking for the San Antonio Court of Civil Appeals made the following observation:

"Appellant further complains that the Act violates Sections 56 and 57 of Article III of our Constitution in that it attempts to regulate the affairs of a county by a local or special law. We overrule this contention, the first sentence in Section 56 reads as follows: 'The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law.' Section 1, Article 5, of the Constitution authorizes the enactment of just such an Act as Article 52-161, C.C.P., and is therefore made an exception in the very first sentence of Sec. 56, Art. 3, of the Constitution."

Some of the cases which have held to the same effect are Lytle v. Halff, 75 Tex. 128, 12 S.W. 610 (1889); State of Texas v. Brownson, 94 Tex. 439, 61 S.W. 115 (1901); San Antonio and A.P. Ry. Co. v. State, 128 Tex. 33, 95 S.W. 2d 688 (1936); Jenkins v. Autry, 256 S.W. 672 (Tex. Civ. App. 1923, error ref.); James v. Autry, 256 S.W. 674 (Tex. Civ. App. 1923, error ref.)

It follows from what has been said that we are of the opinion that the passage of House Bill No. 573 introduced in the 51st Legislature will validly provide for the adoption of a county home rule charter in Dallas County by a majority vote of the county as a whole and make it unnecessary to keep separate the rural and urban votes cast as required by Section 3 of Article IX of the Constitution.

## SUMMARY

Article IX, Section 3, of the Constitution of Texas, specifically provides that the Legislature may pass laws changing the manner of counting and keeping the ballots in an election to determine whether or not a county shall adopt a home rule amendment to its charter. If H.B. 573, 51st Legislature, is enacted, as now written, by a 2/3rd vote of the Legislature, its provisions for counting together rural and urban votes on

Hon. Don A. Lewis, Page 7 (V-810)

> Home Rule Charter elections in Dallas County
> would be constitutional.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     *E. Jacobson*

E. Jacobson

EJ:erc

APPROVED:

*Price Daniel*
ATTORNEY GENERAL