**Opinion issued June 28, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-09-01141-CV**

———————————

**UNION CARBIDE CORPORATION, Appellant**

**V.**

**DAISY E. SYNATZSKE AND GRACE ANNETTE WEBB, INDIVIDUALLY AND AS REPRESENTATIVES AND CO-EXECUTRIXES OF THE ESTATE OF JOSEPH EMMITE, SR., JOSEPH EMMITE, JR., DOROTHY A. DAY, VERA J. GIALMALVA AND JAMES R. EMMITE, Appellees**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2007-43950**

## CONCURRING OPINION

After reviewing a report and testimony from Joseph Emmite's lung doctor, the trial court allowed this lawsuit to proceed past the petition stage. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(e)–(f) (West 2011). Based on medical

evidence of the kind the statute describes, the trial court found the treating physician's opinion that asbestos-related impairment existed reliable enough for a lawsuit to proceed. On this record, the MDL trial court did not abuse its discretion in reaching that conclusion. Because the record supports the trial court's finding that the proffered proof meets the requirements of section 90.010(f)(1), we concur in the judgment affirming the order of the MDL pretrial court.

### Discussion

Union Carbide seeks reversal of the trial court's ruling for two reasons. As a preliminary matter, Union Carbide contends that the trial court abused its discretion in considering a physician's report proffered well after the Emmites filed their lawsuit. In challenging the merit of the trial court's ruling, Union Carbide contends that this report does not satisfy the statutory criteria for evidence of impairment under section 90.010(f)(1), because the Emmites provided an out-of-date pulmonary function test to Emmite's pulmonologist, rather than recent testing, and the pulmonologist, Dr. Prince, did not rely on this outdated testing to conclude that Emmite had asbestos-related breathing impairment before his death.

I. **Timing of Expert Reports**

   a. **The First Motion to Dismiss and Reports Proffered Pursuant to Section 90.003**

When they filed their lawsuit, the Emmites filed an expert report pursuant to section 90.003—the statute that governs the required expert reports in most

2

asbestos cases. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.003 (West 2011) (prescribing filing of expert report meeting statutory criteria when claimant asserts asbestos-impairment claim). Section 90.006 prescribes the time for filing an expert report under section 90.003: it must be served within thirty days of the defendant's answer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.006(a) (West 2011).

The Emmites timely filed and served Dr. Kradin's report on Union Carbide. And they timely supplemented the Kradin report, with Dr. Britton's report, after Union Carbide moved to dismiss their claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.007(a) (West 2011) (permitting motion to dismiss in response to claimant's failure to timely serve report or failure to serve report that complies with section 90.003 or 90.004); *see also id.* § 90.007(b) ("A claimant may file a response to a motion to dismiss on or before the 15th day after the date the motion to dismiss is served. A report required by Section 90.003 or 90.004 may be filed, amended, or supplemented within the time required for responding to a motion to dismiss.").

The MDL court considered Union Carbide's motion to dismiss at a September 2007 hearing. The trial judge denied the motion on the record, but did not issue a written order. Union Carbide did not object to the court's failure to sign a written order, nor did it seek appellate relief from the trial court's ruling. In its briefing, Union Carbide acknowledges that it could have obtained a written order

3

from the MDL judge or filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(11) (West Supp. 2011). Instead, Union Carbide requested that the trial court reconsider its ruling. Because it did not appeal the ruling denying its motion to dismiss within twenty days of the ruling, Union Carbide forewent its right to an interlocutory appeal of the denial of its motion to dismiss. *See* TEX. R. APP. P. 26.1(b).

In November 2007, the MDL court heard Union Carbide's motion to reconsider. The court declined to rule on the motion during the hearing. At the hearing, the Emmites—still proceeding under section 90.003—alerted the MDL court that they planned to produce an amended death certificate, listing asbestosis as a contributing cause of Emmite's death. According to the plurality, the MDL court impliedly considered this a motion to extend time under section 90.007(e) to introduce supplemental evidence into the record, and the MDL court did not abuse its discretion in granting a six-week extension to the Emmites. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.007(e) ("On the motion of a party showing good cause, the court may shorten or extend the time limits provided in this section for filing or serving motions, responses, or reports.").

We disagree with the plurality's analysis. In refusing to dismiss the case, the MDL court determined that Union Carbide's September 2007 motion to dismiss lacked merit. In doing so, the court impliedly concluded that the claimant's report

4

complied with section 90.003. *See id.* § 90.007(c). Thus, the Emmites had no reason to seek an extension to cure their report or supplement it. But if the court had concluded that the report was deficient, the claimants could not have cured it at that point. The statute requiring dismissal is mandatory, not permissive; it provides that, "if the court is of the opinion that a motion to dismiss is meritorious, the court shall, by written order, grant the motion . . . ." *See id.* Although section 90.007(e) allows the trial court to "extend the time limits provided . . . for filing or serving motions, responses, or reports" for good cause shown, it does not permit claimants to cure a deficient report once the trial court has decided the matter. *See id.* § 90.007(e). Section 90.007 is unlike other statutes that grant time for a claimant to cure a report once a trial court has found it deficient. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (c) (West 2011) (requiring expert report in suit against doctor for medical liability and granting trial court discretion to grant one thirty-day extension for failure to serve adequate report), *and* TEX. CIV. PRAC. & REM. CODE ANN. § 128.053(c) (West Supp. 2011) (requiring expert report in suit against sport-shooting range and granting trial court discretion to grant one thirty-day extension to cure deficient report), *with* TEX. CIV. PRAC. & REM. CODE ANN. § 90.007 (requiring expert report in suit for asbestos impairment but containing no provision for extension of time to cure deficient report), *and* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (c)

(West 2011) (requiring certificate of merit in suit against licensed professional but containing no provision for extension of time to cure deficient report), *and Sharp Eng'g v. Luis*, 321 S.W.3d 748, 754 n.10 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (Sullivan, J., concurring) (noting lack of opportunity to cure deficient report filed under Chapter 150). Under section 90.007, a trial court has no authority to reopen the record after denying a motion to dismiss to permit claimants to cure a timely filed, but otherwise deficient report. Instead, the claimant must file a new lawsuit, attaching a complying report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.007(c) ("A dismissal under this section is without prejudice to the claimant's right, if any, to assert claims for an asbestos-related injury or a silica-related injury in a subsequent action.").

Union Carbide's participation in the discovery process did not waive its appellate complaint. *See Pro Plus, Inc. v. Crosstex Energy Servs., L.P.*, 01-11-00025-CV, 2012 WL 404500, at *14, — S.W.3d — (Tex. App.—Houston [1st Dist.] Feb. 9, 2012, pet. filed) (participating in litigation process and discovery did not waive right to seek motion to dismiss for failure to timely file certificate of merit in suit against licensed professional). Courts have held that participating in the litigation process or delaying pursuit of dismissal, without more, does not show intent to waive a right to dismissal. *See, e.g., Jernigan v. Langley*, 111 S.W.3d 153, 157–58 (Tex. 2003) (doctor did not waive motion to dismiss even though he

6

waited more than 600 days to file motion, participated in discovery, and moved for summary judgment); *Ustanik v. Nortex Found. Designs, Inc.*, 320 S.W.3d 409, 414 (Tex. App.—Waco 2010, pet. denied) (participating in discovery process does not, alone, constitute waiver); *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 411 (Tex. App.—Dallas 2010, pet. denied) (waiting more than one year to file dismissal motion did not manifest intent to waive). Participating in the litigation process by conducting discovery does not manifest a defendant's intent to waive a right to seek dismissal. *See Ustanik*, 320 S.W.3d at 414. Dismissal of the suit against it is ultimately any defendant's goal.

### b. Consideration of Section 90.010 Reports and Evidence Introduced in Response to Union Carbide's Pending Motion to Reconsider

Union Carbide's motion to reconsider remained pending before the trial court from October 2007 until December 2009. The parties did not press the trial court for a ruling on Union Carbide's motion to reconsider, and they continued to seek and offer evidence into the record. Significantly, during this time, the Emmites elected to proceed under section 90.010. As Chapter 90 contemplates that reports filed under section 90.010 are not subject to the same timing requirements that govern reports filed under section 90.003, the trial court did not abuse its discretion in considering this supplemental evidence.

7

The Emmites invoked section 90.010's safety-valve provision in response to Union Carbide's renewed request that the case be dismissed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(e)–(f). Citing the "extraordinary circumstances" provision of the asbestos statute, the Emmites proffered new expert reports into the record, including one from Dr. Prince, the board-certified pulmonologist who saw Emmite in the hospital before he died. *See id.* The Emmites also introduced an amended death certificate signed by Dr. McClure into the record, listing asbestosis as a cause of Emmite's death.

During a January 2008 hearing (the second hearing on the motion to reconsider), the MDL court noted that the Emmites had invoked section 90.010 and had requested an evidentiary hearing to determine whether their claim met Chapter 90's safety valve. *See id.* The MDL court granted the Emmites' motion for a full evidentiary hearing. *See id.* § 90.010(g). The court also granted Union Carbide's request to depose Dr. McClure. In reply, the Emmites offered Dr. Prince's amended report into the record.

In November 2009, the MDL court held a third hearing on Union Carbide's motion to reconsider and ordered Union Carbide to file written objections to Dr. Prince's report. Union Carbide complied, while maintaining that the trial court should not consider Dr. Prince's amended report because it was not timely filed and did not meet the statutory criteria set forth in section 90.010. In December

8

2009, the trial court denied Union Carbide's renewed motion to dismiss by written order.

According to Union Carbide, the trial court had no discretion to consider any of the evidence—and in particular, Dr. Prince's final report—beyond Dr. Kradin's report and Dr. Britton's initial reports, because Dr. Prince's report was not served together with the Emmites' lawsuit. Proceedings under section 90.010's safety valve, it argues, are subject to the same filing and time constraints as those that govern section 90.003. The structure of the statute, however, suggests the opposite conclusion—that a trial court's decision under section 90.010 is not similarly time-constrained.

When construing a statute, we examine its plain meaning. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Our objective is to determine the legislature's intent. *Shumake*, 199 S.W.3d at 284. In discerning this intent, we may consider other matters, including the objective of the law, its legislative history, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2005); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). Applying these principles, we conclude that the trial court was within its discretion to consider the medical reports before it.

9

First, Chapter 90 does not require the election that Union Carbide advances. Chapter 90 does not prohibit a claimant from invoking section 90.010 after foundering (or, in this case, prevailing) under section 90.003. If a claimant proceeds under the section 90.010 safety valve, the legislature made the case, expressly, an "except[ion]" to the mandatory dismissal rules contained in section 90.007. TEX. CIV. PRAC. & REM. CODE ANN. § 90.007(c) ("Except as provided by Section 90.010(d) or (e), if the court is of the opinion that a motion to dismiss is meritorious, the court shall . . . grant the motion . . . ."). Section 90.010(g) requires that the MDL court afford the parties a reasonable discovery period, and it must hold an evidentiary hearing to address the merit of the motion to dismiss. *Id.* § 90.010(g). The MDL court must make specific fact findings in support of its decision. *Id.* § 90.010(h). An MDL court's determination under section 90.010 thus is one beyond section 90.007's prima facie acceptance or rejection of the initial report filed at the outset of the lawsuit. Unlike section 90.003, section 90.010 expands the trial court's consideration of evidence well beyond the initial report—and is silent as to deadlines for this supplementation, leaving them to the MDL court.

Second, Dr. Prince's report was not served in response to Union Carbide's initial motion to dismiss. The Emmites had prevailed on that matter with a report that they had timely served. The Emmites filed supplemental expert

10

reports, including Dr. Prince's report, and Union Carbide deposed Dr. McClure and Dr. Prince—all in connection with Union Carbide's renewed request that the trial court dismiss the case. Significantly, during that time, the Emmites elected to proceed under the safety valve, the part of the statute that expressly allows for supplementation of the evidentiary record. Nothing in the statute prohibited the court from considering this evidence—including Dr. Prince's report—in response to Union Carbide's December 2009 renewed motion to dismiss. *See id.* § 90.010(g) (requiring reasonable discovery period and an evidentiary hearing). Section 90.010(g) does not impose a time frame—neither for obtaining discovery, nor for the completion of the hearing. Section 90.010(e) does not require that a report complying with subsection (f)(1) be served within the time frame required under section 90.006. *See id.* § 90.010(e). Concomitantly, section 90.006 requires only that section 90.003 and 90.004 reports (not section 90.010(f)(1) reports) be filed within thirty days after a defendant answers the lawsuit. TEX. CIV. PRAC. & REM. CODE ANN. § 90.006(a).

Union Carbide replies that, even if the statute does not contain timing requirements prohibiting the filing and consideration of Dr. Prince's report, the delay in this case is not reasonable, as it undermines the legislature's intent that Chapter 90 operate to weed out frivolous asbestos claims early in litigation. We agree that the legislature enacted Chapter 90 to weed out claimants who cannot

11

show breathing impairment, and early consideration of dismissal is the contemplated norm for all but the rarest of asbestos cases. But the legislature enacted section 90.010 for the "exceptional and limited" case, one outside the norm. *See id.* § 90.010(j). It narrowly defined the parameters of such a case in detail. Section 90.010 does not impose a deadline for the length of time of discovery, nor for conducting an evidentiary hearing, nor for the ultimate ruling on the merit of the motion to dismiss. Section 90.006 does not impose its timing requirements for reports filed under 90.010, but rather only for those under section 90.003 and 90.004. Even if it did, the practical effect on a meritorious section 90.010 report would be limited, because any dismissal under the statute is without prejudice to refiling the suit. *See id.* § 90.007(c). Under the procedure the legislature established in section 90.010, we hold that the trial court was not confined to the Emmites' original report (as amended) in considering Union Carbide's renewed request for dismissal, and could consider Dr. Prince's section 90.010(f)(1) amended report.

## II. Compliance With Requirements of Section 90.010

Union Carbide claims that the MDL court's findings lack an element of necessary support—a recent, as opposed to an out-of-date, pulmonary function test. The plurality agrees, decides that Dr. Prince's report is deficient under the statute, and declares the law unconstitutional for this reason.

12

### a. Standard of Review

Three principles encouraging our deference to the trial court's order are in play. First, in determining legislative intent, we accord statutes their plain and common meaning. *Shumake*, 199 S.W.3d at 284. Second, the legislature presumes that a court will interpret its enactments in a manner abiding with the constitution, if a constitutional interpretation reasonably can be afforded. *See* TEX. GOV'T CODE ANN. § 311.021 (West 2005). The overarching intent of the legislature, in passing any enactment, is that it comply with our state and federal constitutions. *See id.* ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended . . . ."). Accordingly, "[w]e presume that a statute passed by the Legislature is constitutional." *Nootsie*, *Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). A court must not hold a legislative enactment to be unconstitutional unless it is absolutely necessary to so hold. *Texas State Bd. of Barber Exam'rs v. Beaumont Barber Coll., Inc.*, 454 S.W.2d 729, 732 (Tex. 1970) (citing *Smith v. Patterson*, 111 Tex. 535, 538 (1922); *State v. Brownson*, 94 Tex. 436, 439 (1901); *Lytle v. Halff*, 75 Tex. 128, 132 (1889)). Thus, we construe statutes to avoid constitutional infirmities, if possible. *Nootsie*, 925 S.W.2d at 662.

Third, the trial court is the main arbiter of questions of proof, and section 90.010 expressly vests the trial court with reliability and credibility determinations.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(2)(A) ("[T]he MDL pretrial court shall determine whether . . . the report and medical opinions offered by the claimant are reliable and credible . . . ."). We should reverse only if these determinations are an abuse of its discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (trial court dismissal under former article 4591i, that required trial court to determine if an expert report was made in good faith based on whether it "appear[ed] to the court" that it did so, was reviewed for an abuse of discretion); *see also Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (reviewing a trial court's decision to deny a motion to dismiss for failure to file a certificate of merit under an abuse of discretion standard); *Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.) (reviewing trial court's dismissal in suit against professional for abuse of discretion and observing, "we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.") (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). With these principles in mind, we turn to whether the MDL court erred in concluding that Dr. Prince's report satisfied section 90.010(f)(1).

### b. Section 90.010(f)(1) Requirements

Chapter 90 provides a safety valve for asbestos claimants who, due to "extraordinary physical or medical characteristics," cannot meet its typical pulmonary-impairment proof requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(2)(B), (h)(1), (j). That safety valve still requires a physician's report with reliable indicia of trustworthiness. *See id.* § 90.010(f)(1)(A)–(B). But, with regard to pulmonary function testing, the safety-valve requirement is different: rather than requiring that pulmonary function testing reveal particular results, the safety-valve section requires only that pulmonary function testing "has been performed on the exposed person," and "the physician making the report has interpreted the pulmonary function testing." *Id.* § 90.010(f)(1)(B)(ii). The provision supposes that the MDL court may accept other medical proof as a reliable foundation for a physician's opinion—and that a treating doctor may reject the usefulness of pulmonary function testing. *See id.* § 90.010(f)(1), (g).

In this single instance—over years of handling the MDL asbestos docket—the MDL court found that the "extraordinary circumstances" section 90.010 allows this lawsuit to proceed, absent the typical pulmonary function results indicating breathing impairment. Dr. Prince opined that Emmite's debilitating illness rendered him unable to take a pulmonary function test when Dr. Prince examined him during a 2005 hospital visit. Emmite, however, had on occasion performed

15

pulmonary testing—albeit historic and not recent, and conducted by his employer. The Emmites provided these test results to Dr. Prince, who reviewed and interpreted the results. Compliance with the plain wording of the statute is undisputedly present. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(1)(B)(ii); *see also City of San Antonio*, 111 S.W.3d at 25 (directing courts to first look to "plain and common meaning of statute's words" in cases involving statutory construction).

The plurality correctly observes that the historic test results, although a part of Emmite's medical history, played no role in Dr. Prince's diagnosis of pulmonary impairment. But the statute does not require that they do. A test must be performed, and it must be interpreted; but section 90.010 contains no provision that the testing be the basis for an impairment diagnosis. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(1). Instead, section 90.010 lists other evidence that can support a treating physician's conclusion that the claimant has asbestos-related impairment "comparable to the impairment the exposed person would have had" if he could meet the pulmonary function testing requirements of the statute, like pathologic and radiographic results. *See id.* § 90.010(f)(1)(B)(iii), (iv). The statutory language vests the MDL court with discretion to make the determination whether the physician's report—a report that is not based on a pulmonary function test, but is comparable—is adequate. *See id.* § 90.010(f)(2).

16

The MDL trial court in this case made preliminary fact-findings after an evidentiary hearing. Among these: Emmite worked as an insulator for approximately thirty-nine years; some evidence exists that Emmite's death was in part caused by asbestos; Emmite suffered from physical and mental limitations, which made it impossible for him to take a pulmonary function test; and, had Emmite been capable of performing a pulmonary function test, the results would have demonstrated pulmonary impairment greater than that required under section 90.003 of the Texas Civil Practice and Remedies Code. The evidence that supports these impairment findings includes: (1) records of a diagnostic and therapeutic medical procedure—a thoracentesis—where doctors removed fluid from Emmite's lungs, revealing findings consistent with an exudative pleural effusion and asbestosis, (2) an autopsy report, (3) Joseph Emmite's medical records and occupational history, and (4) a chest CT scan revealing extensive pleural and diaphragmatic calcifications, a right pleural effusion, and bilateral interstitial fibrotic patterns. Union Carbide has not challenged the sufficiency of the evidence supporting the court's factual findings. Nor did Union Carbide proffer an expert to controvert Dr. Prince's conclusion that Joseph Emmite suffered asbestos-related impairment during his lifetime. We should defer to the evidentiary findings of the MDL pre-trial court, because they are reasonable and supported by the evidence. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211

17

(Tex. 2002) (trial court does not abuse its discretion if some evidence of substantive and probative character supports the trial court's decision). The MDL judge also found that, had Emmite performed a recent pulmonary function test, the test would have "demonstrated pulmonary impairment greater than required under Texas Civil Practice and Remedies Code § 90.003." Union Carbide does not challenge that finding.

In concluding that Dr. Prince's report satisfies the requirements of section 90.010(f)(1)(B)(ii), we do not read section 90.010(f) in a vacuum. Section 90.010(f)—which applies to MDL proceedings only and grants an MDL judge the discretion to accept substitute proof for extraordinary reasons—contains safeguards to eliminate unmeritorious claims for asbestos-related impairment. These safeguards differ from those contained in section 90.003. Nevertheless, they erect barriers to limit the application of section 90.010 to extraordinary cases. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(j) ("Subsections . . . (e)–(i) . . . apply only in exceptional and limited circumstances in which the exposed person does not satisfy the medical criteria of Section 90.003 or 90.004 but can demonstrate meaningful asbestos-related . . . physical impairment that satisfies the requirements of subsection (f)."). An expert report filed in accord with section 90.010(f)(1) must meet the following requirements: (1) the expert report must satisfy selected

18

statutory criteria contained in section 90.003,[1] (2) the expert making the report must have a physician-patient relationship with the exposed person, (3) the expert must conclude that radiographic, pathological, or CT evidence establishes bilateral pleural disease, and (4) the physician must conclude that the impairment is sufficiently serious to be comparable to the statutory criteria for impairment set forth in section 90.003(a)(2)(D). TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(1)(A)–(B). After conducting an evidentiary hearing, the MDL judge—who is appointed by the Chief Justice of the Texas Supreme Court and who routinely hears issues regarding asbestos cases—must make written fact findings. *Id.* § 90.010(f)(2), (h)(1)–(2). Among these, the MDL judge must find that: (1) the treating physician's report is "reliable and credible," (2) the claimant's "unique or extraordinary physical or medical characteristics" render the statutory medical criteria set forth in section 90.003 inadequate to assess the claimant's physical

---

[1] Section 90.010(f)(1)(A) requires that a report meet criteria set forth in section 90.003. TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(1)(A). The report must be completed by a physician who is board certified in pulmonary medicine, internal medicine, or occupational medicine. *Id.* § 90.003(a)(2). It must verify that the physician (1) performed a physical examination of the person or reviewed available medical records, (2) took a detailed occupational history from the exposed person or, if the claimant is deceased, from a person knowledgeable about the alleged exposure, (3) took a detailed medical and smoking history, including other medical problems and their probable causes. *Id.* § 90.003(a)(2)(A). The report must also (1) verify that at least ten years have elapsed between the exposure to asbestos and the date of the diagnosis, (2) rule out other causes of the impairment, and (3) attach pertinent test results. *Id.* § 90.003(a)(2)(B), (E), (F).

19

impairment, and (3) the claimant's physical impairment is comparable to the statutory medical criteria for impairment under 90.003. *Id.*

Union Carbide contends that Dr. Prince's report does not satisfy a different safeguard—the pulmonary testing requirement. *See id.* § 90.010(f)(1)(B)(ii). In so doing, Union Carbide asks the Court to adopt a statutory construction that any pulmonary function testing must meet three criteria for test results to pass statutory muster, even under the safety valve: (1) a measurement level that is above normal but below the statutory medical criteria and thus demonstrates some impairment, (2) a recency requirement, and (3) reliance by the treating physician on the results for his diagnosis. Union Carbide contends that, because the pulmonary function testing the Emmites proffered reveals normal results, was not in connection with hospitalizations before Emmite's death, and Dr. Prince did not use the test to diagnose Emmite, the suit must be dismissed. The plurality adopts this statutory construction, concluding that Dr. Prince's report is defective, thus rendering the statute an unconstitutional, ex post facto law, is its view.

We disagree with such a construction. First, the legislature did not create the impairment measurement criteria that Union Carbide seeks to advance. Rather, the legislature created one definition for impairment reflected in pulmonary tests for section 90.003 cases, and expressly granted discretion to the MDL court to consider other test results when pulmonary function test results do not satisfy the

90.003 medical criteria—the statute even lists sources of alternative medical proof. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 90.003 (listing pulmonary function test requirements for expert report in asbestos-related impairment cases), *with* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010 (granting MDL trial court discretion to consider expert report that does not satisfy medical criteria of section 90.003, provided report meets alternative requirements and demonstrates meaningful impairment). A claimant invokes the safety-valve provision only when he cannot satisfy the statutorily-required medical criteria for pulmonary function testing under section 90.003.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(e), (j). The very existence of the safety-valve provision suggests that the legislature intended to allow a treating physician (and, ultimately, the MDL judge) to reject useless pulmonary function test results when other strong medical evidence supports a finding of impairment. The relevance of these test results cannot be determined by measurement levels alone.

Second, Union Carbide suggests that the claimant's tests are not relevant because they are decades old. But test results that are part of a patient's medical history may be relevant even though they are old. For example, old pulmonary function test results may help determine the onset of impairment. And normal test results may indicate no breathing impairment caused by exposure at the time.

---

[2] If the minimum statutory criteria can be satisfied, the other criteria set forth in section 90.003(a)(2) presumably will also be satisfied.

21

Either circumstance may cause the MDL trial judge to question the credibility and reliability of a physician's report who disregards their diagnostic value. In such a case, the MDL judge could, in the exercise of his discretion, deny the plaintiff from bringing a suit under the safety valve provision.

Finally, Union Carbide claims that the treating physician must rely on pulmonary function test results in reaching his diagnosis. Dr. Prince admits that he did not rely on the old pulmonary function test results in reaching his impairment opinion, states that Emmite was physically incapable of performing such a test at the time he saw him in the hospital, and that a pulmonary function test would have shown impairment if Emmite could have completed one. Union Carbide's argument is premised on its assertion that the pulmonary function testing requirement is meaningless without a doctor's reliance on the test results—results that the safety-valve provision contemplates are infirm under section 90.003. We disagree. The legislature reasonably adopted criteria to allow the MDL judge discretion to weigh all the medical evidence in cases by claimants with "unique or extraordinary physical or medical characteristics." TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(2)(B), (C) (requiring trial judge to find that, due to extraordinary circumstances, medical criteria in section 90.003 do not address claimant's impairment, but requiring sufficient credible evidence to allow fact finder to conclude that claimant suffered impairment comparable to standards set forth in

22

section 90.003). Section 90.010(f)(1)(B)(ii) contains no directive requiring proof that the treating physician rely on the pulmonary function test results to conclude that a claimant is impaired from asbestos exposure. To the contrary, under that section, a claimant seeks to prove impairment based on other medical evidence— for the very reason that the pulmonary function test is unreliable. It was those sorts of instances that the safety valve was intended to address. If a statutory reading requiring reliance on these results springs constitutional doubt, and another reasonable interpretation exists, then it is not the interpretation that the legislature intended. *See* TEX. GOV'T CODE ANN. § 311.021. We will not read language into the statute that the legislature did not include. *See Iliff v. Iliff*, 339 S.W.3d 74, 80–81 (Tex. 2011); *see also Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991) (observing that courts may not judicially amend statute to add words not implicitly contained in statute); *Duncan, Wyatt & Co. v. Taylor*, 63 Tex. 645, 649 (1885) (declaring that courts may not add statutory conditions or provisions not included by legislature). We conclude that the report meets the statutory criteria: the claimant tendered pulmonary function test results to his treating physician, and the physician verified that he reviewed and interpreted the testing. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.010(f)(1)(B)(ii).

23

## Conclusion

Chapter 90 prevents meritless or premature asbestosis claims from clogging the court system. The MDL court found this suit to be neither premature nor wholly meritless. The plurality rejects the MDL court's findings and a constitutional reading of the statute in favor of an expansive interpretation, requiring that pulmonary function testing be of a particular kind at a certain date. Just such an interpretation, it holds, renders the statute an unconstitutional ex post facto law. Whether a new proof requirement in a nascent wrongful death case is an ex post facto law under the constitution is one question. But the MDL court found that the statute's proof requirement was met. The MDL court's decision holds sway and should be evaluated in light of a constitutional reading of the statute, because one can be had. We conclude that the trial court did not abuse its discretion in refusing to dismiss the case, because sufficient evidence supports its findings under section 90.010.

Jane Bland
Justice

Panel consists of Justices Jennings and Sharp.

A majority of the justices of the Court voted in favor of reconsidering the case en banc. TEX. R. APP. P. 49.7.

24

The en banc court on reconsideration consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Sharp, and Brown.

Justice Jennings, writing for the En Banc Court, joined by Justices Higley and Sharp.

Justice Keyes joins parts I, II, III, and IV of the En Banc Opinion.

Justice Bland, concurring in the judgment, joined by Chief Justice Radack and Justice Brown.

Justice Keyes, dissenting from the judgment.

Justices Massengale and Huddle not sitting.