

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00272-CV

**MIKE USTANIK AND WIFE, TERESA USTANIK,**

          **Appellant**

**v.**

**NORTEX FOUNDATION DESIGNS, INC., JERRY L. COFFEE, P.E.,
AND READY CABLE, INC.,**

          **Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. C20070097**

# O P I N I O N

Mike and Teresa Ustanik sued Nortex Foundation Designs, Inc. and Jerry Coffee when the foundation on their newly built house failed. When the trial court granted Nortex's and Coffee's motion to dismiss, the Ustaniks appealed. Because the trial court did not err in dismissing the Ustaniks's suit against Nortex and Coffee, we affirm the judgment of the trial court.

**SECTION 150.002**

At the time the Ustaniks filed their suit against Nortex and Coffee, Texas Civil Practice and Remedies Code section 150.002 required that a plaintiff, in a suit for damages arising out of services by a design professional, file with the complaint a "certificate of merit"—the affidavit of a third-party licensed professional engineer. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) (Vernon Supp. 2009)). The current version of Section 150.002 applies to a suit filed or commenced on or after September 1, 2009, the effective date of the amendments. Here, the Ustaniks originally filed their suit against Nortex and Coffee on February 8, 2007. Accordingly, we apply the former version of section 150.002 in this case.

The parties do not dispute that the Ustaniks failed to file the certificate of merit with their suit. The required result of that failure is a "dismissal of the complaint," with or without prejudice. *See id*. (current version at § 150.002(e)). The trial court dismissed the claims without prejudice.

### Standard of Review

We review a trial court's decision on a motion to dismiss a case for failure to comply with section 150.002 for an abuse of discretion. *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.); *see also Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (applying similar statute in context of

healthcare liability suits). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles when it dismisses, or refuses to dismiss, a claim. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Palladian Bldg.*, 165 S.W.3d at 433. However, if resolution of the issue requires us to construe statutory language, we review under a de novo standard. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *Palladian Bldg.*, 165 S.W.3d at 436 (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)). Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case. *See Palladian Bldg.*, 165 S.W.3d at 436.

## WAIVER

In their first issue, the Ustaniks argue that the trial court erred in granting Nortex's and Coffee's motion to dismiss because Nortex and Coffee waived their right to contest the Ustaniks' failure to file a certificate of merit with their original petition.

The Fort Worth Court was the first appellate court in the State to analyze the doctrine of waiver in conjunction with a motion to dismiss pursuant to section 150.002. *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 434-435 (Tex. App.—Fort Worth 2005, no pet.). Following the Texas Supreme Court's method of analyzing waiver regarding the right to dismiss in a medical liability act case, the Forth Worth Court held that the defendant took no action that would preclude it from requesting a

dismissal. *Id. See Jernigan v. Langley*, 111 S.W.3d 153 (Tex. 2003). We, too, will follow that same analysis.

Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 434 (Tex. App.— Fort Worth 2005, no pet.). Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law. *Jernigan*, 111 S.W.3d at 156; *Palladian Bldg.*, 165 S.W.3d at 434. Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Jernigan*, 111 S.W.3d at 156. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Jernigan*, 111 S.W.3d at 156; *Palladian Bldg.*, 165 S.W.3d at 434.

The Ustaniks argue that Nortex and Coffee waived their right to a dismissal because Nortex and Coffee waited almost two years and five month to file a motion to dismiss after raising a certificate of merit defense in their original answer and because Nortex and Coffee participated in discovery, designated their expert witness, filed traditional and no evidence motions for summary judgment, participated in mediation, participated in various pre-trial activities, and requested the amending of the Ustaniks'

expert report. Some of the claimed actions taken are not supported by the record. *See Palladian Bldg.*, 165 S.W.3d at 434-435.

Like a former version of the Medical Liability Act, former TEX. REV. CIV. STAT. art. 4590i, § 13.01(d), *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, eff. Sept. 1, 2003, section 150.002 does not contain a deadline to file a motion to dismiss. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b) (Vernon Supp. 2009)).[1] When a statute does not contain a deadline, the mere fact that a defendant waits to file a motion to dismiss is insufficient to establish waiver. *See Jernigan*, 111 S.W.3d at 157; *see also Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 500-501 (Tex. App—Corpus Christi 2009, no pet.). The Ustaniks find it significant that in *Landreth*, the court found no waiver when the defendant waited only 8 days before filing a motion to dismiss after discovering that the affiant did not practice in the same area of practice as the defendant. We do not. The *Landreth* court acknowledged that the certificate of merit statute does not have a deadline and that the Texas Supreme Court found no waiver when a doctor waited 600 days to file a motion to dismiss under the healthcare liability statute, a statute similar to this one. *Landreth*, 285 S.W.3d at 500-501; s*ee Jernigan v. Langley*, 111 S.W.3d 153 (Tex. 2003). The *Landreth*

---

[1] Subsequent to the filing of the original petition in *Jernigan v. Langley*, the legislature amended the Medical Liability Act to require an "objection" to an expert report to be made not later than the 21st day after the report is served. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, eff. Sept. 1, 2003 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009)). The amendment did not address the time frame within which a motion to dismiss must be filed.

court only mentioned the 8 day delay while discussing the action of participating in discovery, finding that there was no intent on Landreth's part to waive its right to file a dismissal. *Id*. at 501. The court *did not* find that a defendant could not wait any longer than a certain period of time. Accordingly, the fact that Nortex and Coffee waited 2 years and five months to file the motion to dismiss is insufficient, by itself, to establish waiver. The critical question is whether Nortex and Coffee took actions that were inconsistent with exercising their right to file a motion to dismiss.

Further, participation in discovery and filing motions for summary judgment do not necessarily demonstrate an intent to waive the right to move for a dismissal. *See Jernigan*, 111 S.W.3d at 157; *see also Perry Homes v. Cull*, 258 S.W.3d 580, 590 (Tex. 2008) (citing examples of participation in discovery where the Court did not find waiver of an arbitration clause). Attempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for a dismissal. *See id*. And even though Nortex and Coffee filed motions for summary judgment, none of the motions were ever ruled on; however, we are not prepared to say that obtaining a ruling on a summary judgment motion is necessarily inconsistent with the right to file a motion to dismiss. Finally, the Ustaniks have not pointed to anything in the remaining documents that shows actions inconsistent with an intent to rely upon the right to seek a dismissal. We have not found anything either. Even the provided portions of the deposition of Coffee do not show an intent to waive the right to seek a dismissal.

In sum, we conclude that Nortex's and Coffee's actions were not so inconsistent with an intent to assert the right to a dismissal under section 150.002 as to amount to a waiver of that right. The Ustaniks' first issue is overruled.

## LACHES

In their second issue, the Ustaniks allege that the trial court abused its discretion in granting the motion to dismiss because the doctrine of laches precluded Nortex's and Coffee's right to seek a dismissal. Laches is an affirmative defense akin to estoppel. *Ft. Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964); TEX. R. CIV. P. 94. Assuming without deciding that the Ustaniks, as plaintiffs, may use this affirmative defense to prevent the dismissal of their suit, the burden was on the Ustaniks to prove the essential elements of laches. *See id.* The two essential elements are (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change of position by another to his detriment because of the delay. *Id; see also Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998); *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80 (Tex. 1989).

We have already held that Nortex and Coffee did not waive their rights to pursue a motion to dismiss. Upon the same basis, arguments, and evidence, we also find that there was not an unreasonable delay by them in filing their motion to dismiss. The Ustaniks did not prove the first element of laches. In attempting to establish the second element, the Ustaniks stated in their response to the motion to dismiss that they hired a new attorney and incurred an additional $22,000 in fees and costs. This is not

the type of "change in position" sufficient to establish the second element.  Further, the Ustaniks provided no evidence to support this statement.  Accordingly, the Ustaniks's second issue is overruled.

## NON-NEGLIGENCE CLAIMS

In their third issue, the Ustaniks argue that the trial court erred in dismissing  the remainder of their claims because those claims are non-negligence claims and are not subject to the requirement for a certificate of merit.  In addition to a claim of negligence, the Ustaniks allege in their second amended petition claims for Deceptive Trade Practices Act violations, negligent misrepresentation, and breach of contract.

Some courts have held that, under the 2005 version of section 150.002, the filing of a certificate of merit is not required for non-negligence claims.  *See Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 500 (Tex. App—Corpus Christi 2009, no pet.); *Consol. Reinforcement v. Carothers Exec. Homes, Ltd.*, 271 S.W.3d 887, 894 (Tex. App.—Austin 2008, no pet.); *Kniestedt v. Sw. Sound & Elecs.*, 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.).  In 2009, the statute was amended to specifically address this determination initiated by the San Antonio Court in 2007.  *See* 2009 Legis. Bill Hist. TX S.B. 1201  ("This issue arose out of a couple of 2007 court cases from the San Antonio 4th Court of Appeals, which said that although the statute was broadened in 2005 from 'negligence' actions to 'any action arising out of the provision of professional services,' the affidavit requirement still spoke only to negligence.

Therefore, the court did not agree that it applied to actions other than negligence, despite clear language in the statute and the fact that it was specifically amended to broaden it in 2005 (HB 1573)"). Thus, under a proper analysis of the 2005 act it may be that if there is not a certificate of merit for the negligence claim, the trial court is required to dismiss not only the negligence claim but to also dismiss "any action arising out of the provision of professional services." As will be explained, we find it unnecessary in this proceeding to resolve that question.

The Ustaniks urge us to follow specific opinions from the Austin and San Antonio courts and hold that, without any analysis of the claims, their other claims are not negligence claims and therefore are not subject to the requirement of a certificate of merit. *See Consol. Reinforcement*, 271 S.W.3d at 894; *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 Tex. App. LEXIS 7860, *6-7 (Tex. App.—San Antonio Oct. 3, 2007, no pet.). However, the First Court, relying on the Fort Worth Court's opinion in *Parker County Veterinary Clinic, Inc. v. GSBS Batenhorst, Inc.*, No. 2-08-380-CV, 2009 Tex. App. LEXIS 8986 (Tex. App.—Fort Worth Nov. 19, 2009, no pet.) (mem.), held that it was not bound by the labels of claims used by the plaintiff and looked to the plaintiff's pleadings to determine whether the additional claims asserted were non-negligence claims. *Ashkar Eng'g Corp. v. Gulf Chem. & Metallurgical Corp.*, No. 01-09-00855-CV, 2010 Tex. App. LEXIS 769, *22 (Tex. App.—Houston [1st Dist] Feb. 4, 2010) (mem.) (appeal dism'd, 2010 Tex. App. LEXIS 2807, April 15, 2010). We believe this to be the better approach.

In many areas of the law, reviewing courts have not bound themselves by the labels given to a party's claims. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 495 (Tex. 2008) ("'[W]e have said that the label attached to the cause of action--whether it be tort, contract, or warranty-does not determine the duty to defend,'" quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007) and *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)); *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (legal malpractice); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (loan agreements); *In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 568 (Tex. App.—Waco 2000, orig. proceeding) (arbitration agreements). We see no reason in these types of cases to be bound by the labels attached to the claims so as to keep us from looking at the pleadings to determine whether the claims asserted are actually non-negligence claims. Thus, we will not follow the methods used by *Consol. Reinforcement and Gomez* which looked only to the label used by the party for a claim.

*Factual Allegations*

According to the Ustaniks's second amended petition, in January of 2004, they hired Graphic Homes, Inc. to rebuild their home that had burned down. Graphic Homes hired Nortex and Coffee to design and draft the foundation plans for the new house. Nortex and Coffee were also hired to inspect the construction of the foundation before the concrete was poured. The Ustaniks contended that they relied on Nortex and

Coffee, as engineers, to design and inspect the foundation. The Ustaniks also claimed that they relied on the expertise of Nortex and Coffee to ensure that the foundation was structurally sound and capable of performing its intended purpose.

Coffee provided Graphic Homes with a set of foundation plans with an engineering certificate stamped thereon. The plans provided a specific depth by which the beams should extend into the soil, a specific thickness for the slab, and the requirement that all inspections for the foundation that require an engineering seal "must be accomplished by the design engineer of record for the foundation." The plans included post-tension cables. They did not, however, include the use of piers which was suggested by a geotechnical engineer. Before the foundation was poured, Steve Jopling, an employee of Nortex inspected the construction of the foundation. Jopling recorded his findings on an inspection form which, at the time the petition was filed, could not be located. The foundation was poured the next day.

Within 7 months of the house being completed, the Ustaniks began to notice the floors cracking, doors jamming, sheet rock and moldings separating, and exterior mortar and rocks cracking. The Ustaniks complained to Graphic Homes which contacted Nortex. Nortex made two separate inspections, four months apart, of the house. Coffee noticed unlevelness ranging from 2 to 3 inches but denied that either he or Nortex had any responsibility for the cracked and unlevel foundation.

*Negligence*

For its negligence claim, the Ustaniks contended that Nortex and Coffee owed them a duty to design and inspect their foundation as reasonable and prudent engineers acting under the same or similar circumstances. They claimed that Nortex and Coffee breached their duty when they failed to design the foundation with the use of piers despite a geotechnical engineer's recommendation. The Ustaniks alleged that Nortex's and Coffee's breach of this duty caused the foundation to fail.

The Ustaniks also alleged that Nortex and Coffee owed them the duty to perform a proper pre-pour foundation inspection. As per the plans, an engineer was to perform the pre-pour inspection. Steve Jopling, who had no expert training or certification, performed the inspection. Thus, the Ustaniks allege Nortex and Coffee breached their duty to properly inspect the foundation prior to it being poured because an engineer did not perform the inspection. The failure to perform a proper inspection contributed to the proximate cause of the foundation failure.

*DTPA*

The Ustaniks alleged that Nortex and Coffee also violated the Deceptive Trade Practices Act. *See* TEX. BUS. & COM. CODE ANN. § 17.46 (b)(5) (Vernon Supp. 2009). Specifically, they alleged that according to the stamped engineered plans, all inspections were to be performed by the design engineer of record for the foundation. They further contended that "sponsorship and approval" of the plans was false,

misleading, and deceptive because a Nortex employee, Steve Jopling, who was not an engineer, conducted the pre-pour inspection. The Ustaniks alleged that they relied on the representation in the plans and that the misrepresentation could not be characterized as advice, judgment, or opinion, taking it out of the professional services exemption of the DTPA.

*Negligent Misrepresentation*

The Ustaniks also claimed that Nortex and Coffee were liable for negligent misrepresentation. Specifically, they alleged that Nortex and Coffee negligently represented to them that all inspections of the foundation would be accomplished by the design engineer of record. They claimed that the representation was made in the course of business and as part of a transaction for which Nortex and Coffee had a pecuniary interest. The Ustaniks alleged that the representations supplied them with false information upon which they relied to their detriment. They also claimed that in making the representation that an engineer would perform the inspection Nortex and Coffee did not exercise reasonable care or competence in communicating the correct information to them.

*Breach of Contract*

In their last claim, the Ustaniks alleged that Nortex and Coffee both expressly and impliedly contracted with Graphic Homes to design a foundation plan that if inspected and constructed properly would fulfill its intended use. They alleged that

Nortex and Coffee breached their contract with Graphic Homes by designing foundation plans that were inadequate for the geographic location of the Ustaniks's home and for failing to perform a proper pre-pour inspection by a licensed engineer which did not reveal a lack of piers, lack of additional reinforcement, or excessive slab thickness. The Ustaniks alleged that these deficiencies caused the foundation to fail.

The Ustaniks further alleged that as intended third party beneficiaries, they asserted their own direct breach of contract claims against Nortex and Coffee. Specifically, they alleged that they were to receive the primary benefit of Nortex's and Coffee's presumed obligation to properly design and inspect the foundation for their home. By failing to design and properly perform a pre-pour inspection of the foundation, Nortex and Coffee breached their express and implied contractual obligations owed to the Ustaniks.

In reviewing all of these claims and factual allegations in the Ustaniks's second amended petition, we conclude the underlying complaint is that the Ustaniks were injured by Nortex's and Coffee's breach of the duty owed to the Ustaniks as a result of their engagement as professional engineers by failing to design a proper foundation and in not properly conducting a pre-pour foundation inspection. Thus, like the First Court in *Ashkar*, we believe that the Ustaniks's additional claims of DTPA violations, negligent misrepresentation, and breach of contract, regardless of how they are labeled, all constitute claims of professional negligence which require a certificate of merit. *Cf.*

*Black v. Wills*, 758 S.W.2d 809, 814 (Tex. App.—Dallas 1988, no pet.) (In the context of a legal malpractice claim, the court stated, "Whichever label Black places on this cause of action, it is in the nature of a tort action…. We also reject the view that Black's claim is technically an 'action for debt…'"). Accordingly, the trial court did not err in dismissing all of the Ustaniks's claims, and their third issue is overruled.

## CONCLUSION

Having overruled each of the Ustaniks's issues on appeal, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
(Justice Davis concurring and dissenting)
Affirmed
Opinion delivered and filed June 16, 2010
[CV06]