**WITHDRAWN 9/15/10**
**REISSUED 9/15/10**



# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-10-00058-CV

**CH2M HILL TRIGON, INC.,**

**Appellant**

 **v.**

**J7 CONTRACTORS, INC.,**

**Appellee**

_____

**From the 77th District Court**
**Freestone County, Texas**
**Trial Court No. 09-172-A**

_____

## MEMORANDUM  OPINION

_____

J7 Contractors, Inc, a Texas corporation with its principle place of business in Fairfield, Texas, filed suit against CH2M HILL Trigon, Inc., for fraud and tortious interference.  Trigon, a Delaware corporation with its principle place of business in Colorado, filed a special appearance.  After the initial hearing was continued and J7 was allowed to amend its petition, the trial court conducted another hearing and denied Trigon's special appearance.  Trigon appealed that decision.  Trigon then filed a motion to dismiss J7's claims with prejudice pursuant to section 150.002 of the Texas Civil

Practice and Remedies Code. The trial court denied the motion to dismiss. Trigon also appealed that decision.

Because Trigon's contacts with Texas were sufficient to support general jurisdiction, the trial court's order denying Trigon's special appearance is affirmed. Because J7's claims against Trigon were claims of professional negligence, the trial court erred in denying Trigon's motion to dismiss when J7 did not contemporaneously file a certificate of merit with its petition. The trial court's order denying Trigon's motion to dismiss is reversed and remanded for further proceedings.

## SPECIAL APPEARANCE

Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by the plaintiff. *Id*. When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Retamco*, 278 S.W.3d at 337 (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citations omitted)).

Personal jurisdiction is a question of law which we review de novo. *BMC Software*, 83 S.W.3d at 794. "Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-

process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

In its first amended petition, J7 generally pled that although Trigon is a Delaware corporation with its principal place of business in Englewood, Colorado, it has a registered agent for service of process in Texas, is registered to do business in Texas, has signed contracts with Texas businesses with Texas forum selection clauses, has advertised on its website that it has conducted work in Texas and for Texas business, traveled to Texas to develop work from Texas businesses, and "has otherwise had continuous and systematic contact with Texas, both in its current and former corporate incarnations."

In its response to Trigon's special appearance, J7 also alleged that Trigon recruited J7 for the project that is the subject of the proceeding below, the Colorado project. J7 claimed that Trigon then negligently prepared a bid package and sent it to Texas and made misrepresentations in the context of negotiations and discussions with J7 and other suppliers in Texas that were picked to work on the project.

Trigon argues that, in its original petition, J7 failed to allege any basis for specific or general jurisdiction over Trigon. Trigon makes much on appeal about the fact that J7 was allowed to amend their petition after a continuation of the special appearance hearing. However, because Trigon assigns no error to this decision by the trial court, we will not determine the propriety of that decision. Trigon also argues that the trial court did not have specific jurisdiction because none of J7's claims pled arose from or were related to any contact Trigon had with Texas. Trigon contends that J7's claims

arose solely from alleged acts that occurred in Colorado. Trigon further argues that the trial court could not exercise its general jurisdiction because J7 did not prove a pattern of continuing and systematic activity. Trigon contends that it maintains no office in Texas, owns no real estate in Texas, and does not conduct regular business in Texas.

*STEP ONE—THE LONG ARM STATUTE*

The Texas long-arm statute provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008). The statute's broad doing-business language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Retamco*, 278 S.W.3d at 337 (quoting *Moki Mac*, 221 S.W.3d at 575 (citations omitted)); *accord Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Therefore, we only analyze whether Trigon's acts would bring it within Texas' jurisdiction consistent with constitutional due process requirements. *See Moki Mac*, 221 S.W.3d at 575 (citations omitted).

*STEP TWO—CONSTITUTIONAL DUE PROCESS GUARANTEES*

Under a constitutional due-process analysis, personal jurisdiction is achieved when (1) the non-resident defendant has established minimum contacts with the forum

state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court. *Int'l Shoe Co.*, 326 U.S. at 316.

### A.  Minimum Contacts

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection*, 83 S.W.3d at 806 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). A nonresident's contacts can give rise to either specific or general jurisdiction. *Am. Type Culture Collection*, 83 S.W.3d at 806. General jurisdiction arises when the defendant's contacts with the forum are continuous and systematic. *Id*. at 807. Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). J7 alleged both general and specific jurisdiction.

### 1. General Jurisdiction

A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a "more demanding minimum contacts analysis" with a "substantially higher" threshold. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (citations omitted). General jurisdiction is described as "dispute-blind;" it involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state. *Id*. Further, general jurisdiction is based solely on the defendant's "continuous and systematic" contacts with the forum. *Id.* at 169. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

### 2. Trigon's Contacts

At the second hearing on Trigon's special appearance, J7 relied on many documents attached to its response to Trigon's special appearance and documents attached to its motion to compel discovery. No objection was made to J7's ability to rely on any of these documents for the purpose of contesting the special appearance.

Those documents show that Trigon is registered to do business in Texas and has a registered agent in Dallas. In 2008, Trigon entered into at least three contracts with companies that were either incorporated in or headquartered in Texas. Two of Trigon's employees held professional surveyor licenses in Texas.

In response to interrogatories by J7, Trigon listed written communications and advertising from Trigon to businesses headquartered or incorporated in Texas. At least twelve businesses in Texas were contacted by Trigon during 2008 and 2009. Trigon sent

a proposal to Blue Source, LLC and for which a power point presentation was created the month before. Nine emails were sent to Blue Source personnel to discuss the possibility of working on a project in Kansas. Trigon sent four emails to Conoco Phillips for business development. Also, Trigon sent two emails to Cross Tex Energy for business development. Trigon sent five emails to Kinder Morgan for business development. It also sent a power point presentation to Kinder Morgan and had a booth at a Kinder Morgan supplier showcase. A power point presentation was sent to Spectra Energy. Four emails were sent to Shell Oil for business development. Two more emails were sent to Kinder Morgan, and Trigon gave a presentation to Kinder Morgan about a proposal for an eastern shelf $CO_2$ pipeline study. Ten emails were sent to DCP Midstream, LLC for business development. Trigon also gave a presentation to Midstream and negotiated a master services agreement with Midstream. Fifteen emails were sent to Encore Acquisition Co. for business development. Thirty-one emails were sent to Energy Transfer Transwestern PL for business development and a master service agreement was negotiated between Trigon and Energy Transfer. Trigon gave a presentation to ExxonMobil Development Corp. and issued a proposal for a $CO_2$ pipeline study. Trigon also participated in the El Paso EHS Summit for two days in February of 2009.

Again in response to interrogatories, Trigon stated that .67% of its total gross income in 2007 was earned from contractual services performed in Texas. Almost 70% of its total gross income in 2007 was earned from contractual services for entities incorporated or headquartered in Texas. In 2008, .55% of Trigon's total gross income

was earned from contractual services performed in Texas while 39.2% of its total gross income from the same year was earned from contractual services for entities incorporated or headquartered in Texas. In 2009, .58% of Trigon's total gross income was earned from contractual services performed in Texas while 49.6% of its total gross income from the same year was earned from contractual services for entities incorporated or headquartered in Texas.

The only contract with a Texas company that Trigon produced through discovery was the contract with Kinder Morgan, a company based in Houston. The contract was a 5-year, $10,000,000 contract for services by Trigon to Kinder Morgan for whatever services Kinder Morgan wanted Trigon to perform. The contract is set to expire in 2011. But Trigon has also done business with two more companies in Texas besides Kinder Morgan and J7; it requested bids from and were supplied parts by SPX Flow Control and Kidd Pipeline. Both SPX and Kidd Pipeline are Houston companies.

J7 also produced, and included as an attachment to its response to Trigon's special appearance, a timeline of Trigon's contacts in Texas. This summary is based on documents provided to J7 by Trigon. Trigon did not object to the trial court's consideration of this timeline. In this timeline, J7 detailed when Stu Asselin, Trigon's president, was in Texas. In 2008, Asselin was in Texas for business for a total of 19 days over three non-consecutive months. In 2009, Asselin was in Texas for business for a total of 31 days over five non-consecutive months. Other Trigon personnel had also been in Texas for business. From January 26, 2008 through February 8, 2008, Cody Huffy was in Texas. From May 3, 2008 to May 6, 2008, Mark Hall and Jeff Virdi were in

Texas. Hall was in Stonewall County and Verdi was in the cities of Midland, Odessa, and Snyder. From June to October of 2008 Jeremy and Johnny Prine were in the cities of Sweetwater, Odessa, and Midland. In June of 2008, Doug Chinn spent time in the cities of Midland, Snyder, and Austin. Chinn was in Sweetwater in August of 2008. Justin Sykes was in Texas from September 21 through October 16, 2008. In 2009, John Blakney attended meetings in Houston for four days in February. John Wanzeck was at a pipeline conference in Fort Worth for three days in April. Mark Miller spent two days in Houston for marketing in May, 2009, and Stu Asselin set up a "lunch and learn" for 30 people in Houston during the same timeframe.

In light of these contacts, we conclude that Trigon's contacts with Texas were "continuous and systematic" and were more than sufficient to support general jurisdiction. Accordingly, we need not determine whether Trigon's contacts with Texas supported specific jurisdiction.

### B. Traditional Notions of Fair Play and Substantial Justice

Having determined that Trigon has minimum contacts with Texas sufficient to support general jurisdiction, we must determine whether an assertion of jurisdiction over Trigon comports with "traditional notions of fair play and substantial justice." *Guardian Royal*, 815 S.W.2d at 228. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. at 231 (citing *Burger King*, 471 U.S. at 477). Nonetheless, we still consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009); *Guardian Royal*, 815 S.W.2d at 228, 231.

Trigon contends that it will be unduly burdened to try the case in Texas because all of it employees who may have knowledge of the relevant facts reside in Colorado. However, Trigon had no previous problem sending employees to Texas to participate in training or to gather information. We do not perceive an undue burden, then, in trying a lawsuit in Texas. Trigon also claims that Texas has no interest in adjudicating the dispute between Trigon and J7. However, Texas has an interest in adjudicating disputes involving Texas residents and Texas is a convenient forum to adjudicate this dispute. *See Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.). Further, Trigon contends that the most efficient and complete resolution of the dispute could only happen in Colorado. Notwithstanding that the work was to be performed in Colorado, the shared interest of other states in furthering fundamental substantive social policies can be implemented by Texas courts as effectively as the courts in Colorado. *See id*.

Weighing the various factors, we find that the exercise of general jurisdiction over Trigon by a Texas court does not offend traditional notions of fair play and substantial justice.

Trigon's first issue is overruled.

In its second issue, Trigon argues that the trial court erred in denying its motion to dismiss J7's suit due to J7's failure to file a certificate of merit required by section 150.002 of the Texas Civil Practice and Remedies Code.  At the time J7 filed its suit against Trigon, section 150.002 required a plaintiff, in a suit for damages arising out of professional services by a licensed or registered professional, to file with the complaint a "certificate of merit"—the affidavit of a third-party licensed professional engineer.  *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) (Vernon Supp. 2009)).  The current version of Section 150.002 applies to a suit filed or commenced on or after September 1, 2009, the effective date of the amendments.  Here, J7 originally filed its suit against Trigon on May 26, 2009.  Accordingly, we apply the former version of section 150.002 in this case.  *See Ustanik v. Nortex Found. Designs, Inc.*, 2010 Tex. App. LEXIS 4539, *1-2, ___ S.W.3d ___ (Tex. App.—Waco June 16, 2010, pet. filed).

The parties do not dispute that J7 failed to file the certificate of merit with its suit. The required result of that failure is a "dismissal of the complaint," with or without prejudice.  *See* Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 (amended 2009) (current version at § 150.002(e)).  The trial court denied Trigon's motion to dismiss J7's suit.

## *Standard of Review*

We review a trial court's decision on a motion to dismiss a case for failure to comply with section 150.002 for an abuse of discretion.  *Ustanik v. Nortex Found. Designs,*

*Inc.*, 2010 Tex. App. LEXIS 4539, *2, ___ S.W.3d ___ (Tex. App.—Waco June 16, 2010, pet. filed); *Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.); *see also Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (applying similar statute in context of healthcare liability suits). However, if resolution of the issue requires us to construe statutory language, we review under a de novo standard. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *Palladian Bldg.*, 165 S.W.3d at 436 (citing T*ex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)). Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case. *See Palladian Bldg.*, 165 S.W.3d at 436.

*Non-negligence Claims*

In response to Trigon's motion to dismiss and on appeal, J7 argues that the trial court did not err in failing to dismiss its claims because the claims remaining after J7 amended its petition for the second time are non-negligence claims and are not subject to the requirement for a certificate of merit. J7 alleged in its second amended petition claims for tortious interference and fraud.

Some courts have held that, under the 2005 version of section 150.002, the filing of a certificate of merit is not required for non-negligent claims. *See Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 500 (Tex. App—Corpus Christi 2009, no pet.); *Consol. Reinforcement v. Carothers Exec. Homes, Ltd.*, 271 S.W.3d 887, 894 (Tex. App.—Austin 2008, no pet.); *Kniestedt v. Sw. Sound & Elecs.*, 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.). In 2009, the statute was amended to specifically

address this determination which had been initiated by the San Antonio Court in 2007. *See* 2009 Legis. Bill Hist. TX S.B. 1201 ("This issue arose out of a couple of 2007 court cases from the San Antonio 4th Court of Appeals, which said that although the statute was broadened in 2005 from 'negligence' actions to 'any action arising out of the provision of professional services,' the affidavit requirement still spoke only to negligence. Therefore, the court did not agree that it applied to actions other than negligence, despite clear language in the statute and the fact that it was specifically amended to broaden it in 2005 (HB 1573)").

As we discussed in *Ustanik*, under a proper analysis of the 2005 act, it may be that if there is not a certificate of merit filed with the petition, the trial court is required to dismiss not only any negligence claim but also "any action arising out of the provision of professional services." *See Ustanik v. Nortex Found. Designs, Inc.*, 2010 Tex. App. LEXIS 4539, *11, ___ S.W. 3d ___, (Tex. App.—Waco June 16, 2010, pet. filed). At this time, we find it unnecessary in this proceeding to resolve that question.

In *Ustanik*, we determined that, like the First Court in *Ashkar*, we look to the plaintiff's pleadings to determine whether the additional claims asserted were non-negligence claims and are not bound by the labels of the claims used by the plaintiff. *See id.* at *12; *Ashkar Eng'g Corp. v. Gulf Chem. & Metallurgical Corp.*, No. 01-09-00855-CV, 2010 Tex. App. LEXIS 769, *22 (Tex. App.—Houston [1st Dist] Feb. 4, 2010) (mem.) (*appeal dism'd*, 2010 Tex. App. LEXIS 2807, April 15, 2010). *Contra Consol. Reinforcement*, 271 S.W.3d at 894; *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 Tex. App. LEXIS 7860, *6-7 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (both cases holding that claims

merely labeled as non-negligence claims were not subject to the requirement of a certificate of merit). Accordingly, we look to J7's pleadings to determine if its claims are, in fact, non-negligence claims.

*Factual Allegations*

According to the second amended petition, OneOK, a subsidiary of a company involved in the natural gas business, hired Trigon to provide engineering services for and supervise production of a natural gas pipeline in Colorado. The two companies sent bid requests to Texas. J7 was one of the pipeline companies that responded.

J7 based its bid on the information provided by Trigon. After reviewing the bid, Trigon asked J7 to lower its bid. The contract was awarded to J7 based on the lowered bid. According to the provided bid information, the project was to begin around August 4, 2008 and be completed by November 2008. J7 began moving personnel and equipment in early August but because of delays in the procurement of materials, as well as other issues with Trigon, work was delayed. Trigon did not tell J7 why the start date was delayed or disclose that materials were not going to be timely provided. Trigon insisted, however, that J7 increase its personnel and equipment.

Delays continued to occur on the project. There were delays in receiving necessary materials, surveys and X-ray inspections were not timely completed by Trigon, and Trigon required J7 to follow improper specifications and procedures. One survey provided by Trigon placed a pipeline through old bridge pilings in a river that could not be penetrated by drilling equipment. J7 had to drill significantly deeper to go under the pilings. When it was time for hydrostatic testing, OneOK refused to provide

the water it had previously agreed to provide. After 21 days of delay and after refusing alternative suggestions by J7, Trigon instructed J7 to use irrigation water pumped from area canals. The water was unclean and needed filtration. Filters were replaced "constantly." After filtration, the water was still fouled which required J7 to perform extensive "dewatering" to clean out the pipes.

Hydrotesting revealed that gaskets provided by Trigon were inadequate to hold the pressure. The specifications that Trigon required J7 to use in tightening the gaskets were incorrect and damaged the gaskets. J7 was forced to replace these and other parts.

J7 incurred "massive" additional expenses on the project due to delays by Trigon and due to the changes and increases to the scope of J7's work beyond what was stipulated in the contract. Expenses caused by downtime, improper engineering and surveying, faulty equipment and other changes greatly increased J7's damages.

### Claims Against Trigon

Before Trigon filed its motion to dismiss pursuant to section 150.002 of the Texas Civil Practice and Remedies Code, J7 alleged claims of negligence, negligent misrepresentation, and tortious interference. Each of these claims were based on inaccurate or misrepresented information provided by Trigon about the project and the plans for completing the project. Four days after Trigon filed its motion to dismiss and three months after J7 filed its first amended petition, J7 dropped its negligence and negligent misrepresentation claims, added more to the tortious interference claim, and added a fraud claim.

*Tortious Interference*

In its second amended petition, J7 alleges that Trigon was aware of the contract between OneOK and J7 and that Trigon willfully and intentionally interfered with the contract by misrepresenting facts, failing to disclose facts, providing false information, and delaying J7's performance under the contract.

*Fraud*

J7 also alleges that Trigon misrepresented or failed to disclose material information to J7 regarding the project and the contract in both procuring the contract and in altering goods and services provided under the contract. J7 alleges that Trigon knew the information was false or was reckless in regard to the falsity of the information and failed to disclose critical information or made representations with the intention that J7 rely on those representations. J7 further alleges that Trigon knew that pipe bends, valves, and necessary pieces of equipment would not be delivered to the jobsite in a timely manner and did not disclose the delays to J7.

In reviewing the claims and factual allegations in J7's second amended petition, we conclude the underlying complaint of J7 against Trigon is that J7 was injured by Trigon's failure to disclose information and in providing inaccurate information, such as incorrect surveys. Thus, we believe that J7's claims of tortious interference and fraud constitute claims of professional negligence within the meaning of the statute and as such require a certificate of merit. Accordingly, the trial court abused its discretion in failing to dismiss J7's claims against Trigon due to J7's failure to file the required certificate of merit. Trigon's second issue is sustained.

*Good Cause*

J7 argues that even if Chapter 150 applies, it should be given an extension of time for good cause to comply with the certificate of merit requirement. J7 relies on the last sentence of section 150.002(b) where the statute provides, "The trial court may, on motion, after hearing and for good cause, extend *such time* as it shall determine justice requires." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b) (Vernon Supp. 2009) (emphasis added). However, the phrase "such time" refers to the 30 days given a plaintiff who has not complied with the contemporaneous filing requirement of subsection (a) because the limitation period for the filing of the suit expires within 10 days of the date of filing *and* because of that time constraint, a certificate of merit cannot be prepared and timely filed. In *those* cases, the trial court may grant an extension for good cause. J7 has not alleged that it could not provide a certificate of merit because the limitation period for filing its suit would have expired within 10 days from the filing of the suit. Therefore, this "good cause" exception is not available to J7.

## CONCLUSION

Having overruled Trigon's issue regarding its special appearance but sustained its issue regarding the certificate of merit, the trial court's order denying Trigon's special appearance is affirmed and the trial court's order denying Trigon's motion to dismiss is reversed. This case is remanded for further proceedings.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
      (Justice Davis concurring and dissenting with a note)*
Affirmed in part and reversed and remanded in part
Opinion delivered and filed September 1, 2010
[CV06]


      *("Justice Davis concurs with this Court's judgment on the first issue. He dissents to this Court's judgment on the second issue.")